UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL HOOTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:24-cv-00482-JPH-DML |
| | ) |
| CENTURION HEALTH LLC., | ) |
| BYRD, | ) |
| JOHN DOE, | ) |
| OFFICER LAMB, | ) |
| OFFICER WILSON, | ) |
| MICHAEL HANS, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING SEVENTH AMENDED COMPLAINT, DENYING MOTION FOR COUNSEL, DENYING DEFENDANT'S MOTION TO DISMISS, AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Michael Hooten is a prisoner currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He filed this civil action raising a variety of federal and state law claims.

Mr. Hooten has filed a motion to appoint counsel, dkt. 49, a motion for leave to file a sixth amended complaint, dkt. 59, a motion to rule as moot, dkt. 71, a motion for leave to file a seventh amended complaint, dkt. 82, and a motion for copies, dkt. 83. Defendant Dr. Michael Hans has filed a motion to dismiss, dkt. 68, which the Court addresses below.

**I.     Pending Motions**

On April 10, 2025, this Court denied Mr. Hooten's motion to appoint counsel without prejudice. *See* dkts. 25, 32. Mr. Hooten's newly filed motion to

1

appoint counsel does not offer any additional facts or reasoning that would cause the outcome to be different. Dkt. 49. For this reason, his renewed motion to appoint counsel, dkt. [49], is **denied**.

As to the motion to rule as moot, Mr. Hooten requests that the Court "only screen [his] sixth amended complaint" at docket 59, and "rule [his] fourth and fifth amendments as moot." Dkt. 71 at 1. Because Mr. Hooten has since filed an additional motion for leave to amend his complaint, his motion to rule as moot, dkt. [71], and his motion for leave to file a sixth amended complaint, dkt. [59], are **denied as moot**. For this reason, his motion for leave to file a seventh amended complaint, dkt. [82], is **granted**.

Mr. Hooten's motion for copies specifically requests a copy of the Order Screening Third Amended Complaint and Directing Further Proceedings at docket 39. Dkt. 83. His motion for copies, dkt. [83], is **granted**.

Because the plaintiff is a "prisoner," this Court must screen the amended complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). However, before the Court screens Mr. Hooten's seventh amended complaint, it provides the following warning: District courts "'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)). Mr. Hooten has filed excessive amended complaints in this case and in others. *See* 2:24-cv-00379-JPH-DML and 2:25-cv-00238-MPB-DML. The Court

2

emphasizes that motions for leave to amend the complaint should be filed sparingly, such as when identifying or adding a defendant, or a claim. However, amendments that provide additional facts or seek to provide further justification for claims that are already proceeding are unnecessary. Motions for leave to amend that come after screening are problematic in terms of the parties' and Court's time, expenditures, and ability to ensure justice in a timely manner. Future requests to amend the complaint in this action will be denied absent a showing of good cause for the amendment.

## II.     Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### III. The Seventh Amended Complaint

In the seventh amended complaint Mr. Hooten names five defendants: (1) Centurion Health LLC; (2) Dr. Samuel Byrd; (3) Dr. Michael Hans; (4) Correctional Officer Lamb; and (5) Correctional Officer Wilson. Dkt. 82-1. He sues each in their individual and official capacity.

Mr. Hooten bases his seventh amended complaint on the following allegations, which the Court assumes to be true for purposes of screening:

Mr. Hooten was previously diagnosed with Multiple Sclerosis (MS). He was seen by a neurologist at Indiana University Health (IU) in January 2023 who scheduled an MRI for Mr. Hooten in March 2023. *Id.* at 7. Mr. Hooten's March 2023 MRI showed disease progression. *Id.* He was scheduled to see another IU neurologist, Dr. Hans, in November 2023. *Id.*

Mr. Hooten told Correctional Officers Lamb and Wilson about his medical condition before they began transporting him to IU. *Id.* at 15. However, the officers stopped at multiple fast-food restaurants on the way to Mr. Hooten's appointment causing him to be late for the appointment by an hour. *Id.* at 14. Mr. Hooten had asked the officers when his appointment was, and they responded that the appointment was "whenever we get there." *Id.* at 15. Mr. Hooten was not seen that day as the appointment was cancelled due to his tardiness. *Id.* Because of this incident, officers are no longer permitted to stop for lunch when transporting an inmate to an outside medical appointment. *Id.*

Mr. Hooten's appointment was rescheduled for March 2024. *Id.* at 7. During that appointment, Dr. Hans mentioned that he would have been willing

4

to modify Mr. Hooten's treatment if he had received Mr. Hooten's March 2023 MRI results, but he had made no attempt to get them, despite the fact that the March 2023 MRI took place at IU. *Id.* Dr. Hans ordered another MRI to take place in June 2024. *Id.*

Due to Centurion and Dr. Byrd's failure to forward documentation of Mr. Hooten's previous MRI and Dr. Hans' failure to procure a copy of it, Mr. Hooten was unable to receive timely care, which resulted in progression of his MS that resulted in permanent disabilities. *Id.* at 12.

Centurion has a practice wherein it maintains two sets of incomplete medical records of an inmate – one that is digital to be shared with outside medical providers, and one that is made up of physical copies that only the facility healthcare director has access to. *Id.* at 21. When an inmate requests a copy of the records from the facility health care director, the request is denied due to "safety and security concerns" and "personal information." *Id.* This prevents inmates from being able take their complete medical records to their outside medical provider and discuss proper treatment with them to avoid further injury. *Id.*

Leading up to the June 2024 MRI, Mr. Hooten experienced significant physical decline. *Id.* at 12. He had an MS relapse in April 2024 and now requires assistance with his normal daily activities including walking, as he has lost use of his right leg. *Id.* He also experiences mobility issues in other limbs. *Id.* at 11-12.

In October 2024, Mr. Hooten had a follow-up appointment with Dr. Hans and provided him with copies of his MRI results from both March 2023 and June 2024. *Id.* at 16. Dr. Hans reviewed the results along with images on his computer and conducted an examination of Mr. Hooten. *Id.* Dr. Hans then stated that he believed Mr. Hooten was faking the extent of his injury and proceeded to write new medical orders. *Id.* Dr. Hans ordered Dr. Byrd to keep Mr. Hooten on the same treatment for thirty days and then start him on Ocrevus, a medication for MS. *Id.* However, within a week Dr. Hans called the prison and told Dr. Byrd to start Mr. Hooten on the new treatment as soon as possible. *Id.* Mr. Hooten believes starting on Ocrevus sooner could have prevented his further injuries from MS. *Id.*

Dr. Hans ordered another MRI (with and without contrast) to be scheduled about six months after Mr. Hooten started Ocrevus. *Id.* at 19. That MRI took place on July 3, 2025, but the prison medical staff had only ordered the MRI without contrast. *Id.* On July 9, Mr. Hooten saw Dr. Hans, but medical had once again failed to forward the results of the MRI to Dr. Hans. *Id.* Because of this, Mr. Hooten could not be properly treated. *Id.* As of the filing of the seventh amended complaint, Mr. Hooten had yet to have a follow-up appointment regarding the results of his July 3 MRI. *Id.*

Additionally, Mr. Hooten is not housed in a handicap cell. *Id.* at 21. Staff controls the power and often refuses to turn it on, leaving inmates without running water, and causing them to urinate in the handicap shower. *Id.*

6

Mr. Hooten notes in his amended complaint that all of his treatment and testing for his MS has occurred at IU Health.

Mr. Hooten seeks compensatory damages, punitive damages, attorney's fees if appropriate, and injunctive relief in the form of an Order ensuring that Defendants adequately handle Mr. Hooten's future medical needs.

### IV.     Discussion of Claims

Applying the screening standard to the factual allegations in the seventh amended complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, any claim under the Rehabilitation Act or Americans with Disabilities Act is unrelated to the claims proceeding in this case. Although the claims arise out of Mr. Hooten's MS diagnosis, he does not allege that Centurion Defendants or the transporting officers are responsible or involved with accommodations for disabled inmates in the Indiana Department of Correction ("IDOC"), and it is unlikely that they would be responsible for providing such accommodations. "Individual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Unrelated claims against different defendants cannot proceed in a single lawsuit. *See Owens v. Godinez,* 860 F.3d 434, 436 (7th Cir. 2017). Rule 20(a)(2) of the Federal Rules of Civil Procedure permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." If Mr. Hooten would like to file a complaint about these circumstances, he may do so in a separate action. Therefore, any claims related to his lack of access to a handicap cell and the condition of the handicap shower are **dismissed without prejudice**.

Second, to the extent that Mr. Hooten wishes to bring state-law malpractice claims against Dr. Hans, Dr. Byrd, and Centurion, there is nothing in the seventh amended complaint indicating he complied with the Indiana Medical Malpractice Act's requirement that he first seek review of his claims by a medical review panel before filing suit.[1] *See Metz v. St. Joseph Reg'l Med. Center-Plymouth Campus, Inc.,* 115 N.E.3d 489, 494 (Ind. Ct. App. 2018) (noting that a court lacks subject matter jurisdiction to consider medical malpractice claim unless it has first been considered by a medical review panel); *Castelli v. Steele,* 700 F. Supp. 449, 455–56 (S.D. Ind. 1988) (dismissing Indiana medical malpractice claim for lack of subject matter jurisdiction where plaintiff did not seek medical review panel opinion before filing suit). Mr. Hooten's negligence and intentional infliction of emotional distress ("IIED") claims against Dr. Hans, Dr. Byrd, and Centurion are directly related to his medical malpractice claim, and therefore also covered by Indiana Medical Malpractice Act. *See Union Hospital v. Reagin,* 2025 WL 2319037 *3, 267 N.E.

---

[1] Indeed, the failure to comply with the Indiana Medical Malpractice Act was the basis for Dr. Hans's motion to dismiss, which Mr. Hooten did not respond to. *See* dkt. 68.

8

3d 1051 (Ind. Ct. App. Aug. 12, 2025) (affirming summary judgment of IIED claims explaining that the IIED claims were "merely a repackaging of his medical malpractice claims" and therefore fell under "the purview of the MMA") (citing *Cutchin v. Beard*, 171 N.E.3d 991, 997 (Ind. 2021), *Gierek v. Anonymous 1*, 250 N.E.3d 378, 387 (Ind. 2025), and *Van Sice v. Sentany*, 595 N.E.2d 264, 266 (Ind. Ct. App. 1992)). All state-law medical negligence/malpractice and IIED claims against Dr. Hans, Dr. Byrd, and Centurion are **dismissed**.

The following **claims shall proceed**:

- A *Monell* claim against Centurion as an Eighth Amendment deliberate indifference claim based on the allegation that its practice of denying inmates access to their complete medical records prevented Mr. Hooten from being able to discuss and receive proper treatment from an outside provider.

- Eighth Amendment deliberate indifference claims against Correctional Officers Lamb and Wilson based on Mr. Hooten's allegation that they caused him to be late to and ultimately miss his November 2023 MRI appointment (rescheduled to March 2024) after making three stops at fast-food restaurants.

- Eighth Amendment deliberate indifference claims against Dr. Byrd and Dr. Hans based on Mr. Hooten's allegation that, by failing to provide him timely care (that included the review of his March

9

2023 MRI results), Mr. Hooten experienced serious and irreversible progression of his MS.

- State-law breach-of-contract claims **shall proceed** against Centurion on the theory that Mr. Hooten is a third-party beneficiary to the contract between Centurion and IDOC to provide constitutionally adequate medical care to inmates. See *Dodd v. Wexford Med. Inc.*, No. 3:19CV299- PPS/MGG, 2021 WL 1634424, at *4 (N.D. Ind. Apr. 27, 2021) (permitting similar claim to proceed, but noting that plaintiff may not be able to demonstrate that he is an intended beneficiary of the contract); *Harper v. Corizon Health Inc.*, No. 2:17-CV-228-JMS-DLP, 2018 WL 6019595, at *8-9 (S.D. Ind. Nov. 16, 2018) (dismissing a breach of contract claim against Corizon on summary judgment because the plaintiff did not demonstrate that he was a third-party beneficiary of the contract between Corizon and the IDOC)).
- Indiana negligence and intentional infliction of emotional distress claims against Officer Lamb and Officer Wilson based on allegations of delayed medical care.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed.

### V. Defendant Dr. Michael Hans's Motion to Dismiss

Defendant Michael Hans filed a motion to dismiss negligence claims brought against him by Mr. Hooten. Dkt. 68. Dr. Hans argues that all

negligence claims should be dismissed because he is "a qualified provider under the Indiana Medical Malpractice Act [and Mr. Hooten's] claims for malpractice against [him] are subject to the medical review board, as required by the Indiana Medical Malpractice Act." *Id.* at 3. As determined earlier in this screening no claims for negligence or intentional infliction of emotional distress are proceeding against Dr. Hans because nothing in Mr. Hooten's complaint indicated that he complied with the Indiana Medical Malpractice Act's requirement that he first seek review of his claims by a medical review panel before filing suit. For this reason, Dr. Hans' motion to dismiss, dkt. [68], is **denied as moot**.

### VI.  Conclusion and Reissuance of Process

For the reasons discussed, Mr. Hooten's motion to appoint counsel, dkt. [49], is **denied**. Mr. Hooten's motion to rule as moot, dkt. [71], and his motion for leave to file a sixth amended complaint, dkt. [59], are **denied as moot**. His motion for leave to file a seventh amended complaint, dkt. [82], and his motion for copies, dkt. [83], are **granted**.

The **clerk is directed** to include a copy of the Order Screening Third Amended Complaint and Directing Further Proceedings, dkt. 39, with Mr. Hooten's copy of this Order.

The **clerk is directed** to re-docket the proposed complaint at dkt. 82-1 as the Seventh Amended Complaint. This is now the operative complaint in this action.

11

Defendant Dr. Michael Hans's motion to dismiss, dkt. [68], is **denied as moot**.

The Court screened Plaintiff's original complaint on January 28, 2025, and issued process to Defendants Dr. Byrd and Centurion Health, LLC. Dkts. 13, 14. The Court screened Plaintiff's third amended complaint on June 6, 2025, and issued process to Defendants Officer Lamb, Officer Wilson, and Dr. Michael Hans. Dkts. 39, 41. Defendants Officer Lamb and Officer Wilson have not waived service or otherwise responded. The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to reissue process to Defendants Officer Lamb and Officer Wilson. Process shall consist of the complaint, dkt. 82-1, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry. The **clerk is directed** to issue process to the Defendants electronically.

Additionally, the **clerk is directed** to mail courtesy copies of this Order to Robert Bugher at the Indiana Department of Correction and Patricia Erdmann at the Office of the Indiana Attorney General.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 2/9/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL HOOTEN
988796
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

Electronic service to Indiana Department of Correction:
    Officer Lamb
    Officer Wilson
    (All at Wabash Valley Correctional Facility)

Electronic service to Centurion

All Electronically Registered Counsel

Courtesy Copy:

Patricia Orloff Erdmann
Chief Counsel of Litigation
Office of the Indiana Attorney General
302 West Washington St.
IGCS 5th Floor
Indianapolis, IN  46204

Robert Bugher
Indiana Department of Correction
E334 Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204